## JOE TYSON V. THE STATE.

No. 21637. Delivered June 4, 1941.

The opinion states the case.

*H. Carnie Russell* and *Maurice Short*, both of Fort Worth, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder is the offense; the punishment, thirty years in the State penitentiary.

Deceased, a seventeen-year-old boy, and appellant, twenty-eight years of age, were complete strangers. There is no evidence of prior ill-feeling, animosity, or express motive for the killing. In fact, it is a killing unexplained. All parties are negroes. All events occurred at night.

According to the State's case, the appellant, in company with two women, went to a cafe where sandwiches and beer were served. Appellant exhibited a pistol and made the statement: "When I get drunk I get ornery." Subsequently, he got into an argument with a waitress relative to hamburgers served the women; whereupon the women left, leaving appellant in the cafe, and started walking down the street to go home, and to reach which they had to cross some railroad tracks. One of the women saw the deceased and asked him to walk with them across the tracks. As they were thus proceeding, walking abreast, someone was heard to call, which was followed immediately by a shot. There is no direct testimony as to what the call was or to whom or by whom it was made. The shot was followed by a second shot, and deceased fell mortally wounded from a bullet entering the head at the base of the brain.

As deceased fell appellant came up, when one of the women "told him he had shot the boy;" to which appellant replied: "I only shot him in the leg." Appellant, at that time, had a pistol in his hand, which was later identified as a .32 automatic. Appellant fled from the scene.

Although an examination was made of deceased's body, and the wound probed, it appears that the bullet was not found; at least it was not offered in evidence.

The witness Lewis said that he saw deceased and the two women walking together down the street and saw appellant approach them in a fast walk; that he heard a shot, whereupon one of the women said: "Oh, Joe, don't do that;" that a second shot was fired and deceased fell; that he then saw a gun in the hands of appellant. He identified the gun offered in evidence by the State as having been in appellant's possession as the gun he saw on that occasion.

Appellant's version of the killing was that he was present with the women in the cafe; that they left ahead of him, after which he started home; that he had with him the pistol, which belonged to a friend by the name of Lowe, who had given it to him earlier in the evening to keep for him; that he, becoming curious to know if the gun would shoot or if it was loaded, decided to try it out, whereupon he fired it, holding it downward and shooting it into and toward the ground; that, after the last shot was fired, he heard one of the women holler and rushed up there to see what was the matter; that he saw the deceased, but did not know what had happened to him. He denied seeing any blood and admitted that he did not try to find out who it was. He went on home. He denied that he intentionally shot at anybody or that he had any intent to kill the deceased. He denied knowing that deceased had been hit when he left.

Under these facts, the trial court submitted murder with and without malice, and negligent homicide. No exceptions to the charge are preserved for consideration in the record before us.

Appellant insists that the facts were insufficient to authorize his conviction for murder with malice. To this we cannot agree. From the State's evidence, the jury was amply justified

in the conclusion reached. Whether a killing is one upon malice is a question of fact for the jury's determination.

Appellant contends that the res gestae statement, "I only shot him in the leg," which was offered in evidence by the State, was an exculpatory statement, requiring the State to disprove same, and that the trial court should have given his special charge relative thereto. The statement was not exculpatory. It did not exculpate appellant from guilt. Moreover, appellant testified in the case, denied any intentional shooting of the deceased, and the State did not rely upon the statement to show appellant's guilty connection with the murder. Otts v. State, 116 S. W. (2d) 1084, 135 Tex. Cr. R. 187; Tate v. State, 141 S. W. (2d) 351.

Appellant claims that a new trial should have been accorded him on account of newly-discovered evidence. The claimed newly-discovered testimony is in the nature of impeachment only. A new trial will not, ordinarily, be required for such evidence. Tenner v. State, 145 S. W. (2d) 175; Cox v. State, 145 S. W. (2d) 589; Mims v. State, 146 S. W. (2d) 754.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.